UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
CASE NO. 07-22335-CIV-HUCK/SIMONTON

COMCAST OF SOUTH FLORIDA II, INC.,
a Delaware Corporation, COMCAST OF
CALIFORNIA III, INC., a California Corporation,
and COMCAST OF RICHMOND, INC., a
Virginia Corporation,

        Plaintiffs,

vs.

BEST CABLE SUPPLY, INC., et al.,

        Defendants.
_____/

## ORDER GRANTING JOINT MOTION TO DISMISS
## PLAINTIFFS' AMENDED COMPLAINT

THIS CAUSE is before the Court upon Defendants' Joint Motion to Dismiss Plaintiffs' Amended Complaint, filed November 13, 2007 [D.E. #30]. The Court has reviewed the Motion, Plaintiffs' Response, the Amended Complaint, and all pertinent parts of the record.[1]

### I. FACTUAL ALLEGATIONS

Accepting all well-pled facts in the Amended Complaint as true, the Court assumes the following facts.[2]

Plaintiffs are the owners and operators of cable television systems used for the signal reception, generation, and transmission of video programming to subscribers within thirty-seven states nationwide, including, but not limited to, Florida, South Carolina, and Pennsylvania. Defendant Humberto Vega is the owner and operator of Defendant Best Cable Supply, Inc. and Defendant Vega Enterprise, Inc., which are Florida corporations with their principal places of

---

[1] Plaintiffs did not file a reply in support of their Motion.

[2] The Court draws these facts from the Amended Complaint because, at the motion to dismiss stage, the Court accepts all well-pled facts as true and construes all reasonable inferences therefrom in the light most favorable to the plaintiff. *Ziemba v. Cascade Int'l, Inc.*, 256 F.3d 1194, 1198 n.2 (11th Cir. 2001) (citing *Bryant v. Avado Brands, Inc.*, 187 F.3d 1271, 1273 n.1 (11th Cir. 1999)).

1

business in Miami, Florida. Defendants Joel Vega, John Zaldivar, Patricia Chaves, Luis Bermudez, and Pedro Cancio are employees of Best Cable Supply and Vega Enterprise.

Beginning in 2005 Plaintiffs began to experience theft of amplifiers and related equipment from the field, and also theft from their warehouses. On December 14, 2006 Miami Dade Police entered Best Cable Supply and Vega Enterprise's premises and recovered approximately two tractor trailers of stolen equipment belonging to Plaintiffs.[3] Plaintiffs have confirmed that the large majority of this equipment was stolen from Plaintiff's operations in Florida, South Carolina, and Pennsylvania, as well as other states. The majority of Defendants' business involves the sale of equipment known to be stolen, to customers outside the United States.

Since December 14, 2006 Plaintiffs have continued to experience theft of their equipment, and Defendants have continued to knowingly engage in the receipt and sale (outside of the United States) of equipment stolen from Plaintiffs.

Plaintiffs estimate the value of the stolen equipment taken from locations in Florida, South Carolina, Pennsylvania, and other states to be in excess of two million dollars. Further, Plaintiffs have suffered damages related to the replacement of stolen equipment, as well as administrative expenses dealing with the investigations related to this stolen equipment.

## II. PROCEDURAL HISTORY

Plaintiffs filed suit in this Court on September 6, 2007. *See* D.E. #1. On October 22, 2007 Plaintiffs filed an Amended Complaint (*see* D.E. #20) bringing the following claims: Count 1, violation of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), at 18 U.S.C. § 1962(c), against the individual Defendants; Count 2, conspiracy to violate RICO against the individual Defendants; and Count 3, violation of Florida's theft statute, at Fla. Stat. § 772.11, against all Defendants.

On November 13, 2007 Defendants filed a joint Motion to Dismiss the Amended Complaint, which is now briefed and ripe for resolution.

---

[3] According to the Amended Complaint, both Best Cable Supply and Vega Enterprise have the same address listed as their principal place of business. *See* Am. Compl. ¶¶ 5-6.

### III. MOTION TO DISMISS STANDARD

In reviewing a motion to dismiss, all well-pled facts in the plaintiff's complaint and all reasonable inferences drawn from those facts must be taken as true. *Jackson v. Okaloosa County, Fla.*, 21 F.3d 1531, 1534 (11th Cir. 1994). Federal Rule of Civil Procedure 8(a)(2) requires only a "short and plain statement of the claim showing that the pleader is entitled to relief." Specific facts are generally not necessary; the statement need only "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 127 S. Ct. 1955, 1964 (2007) (quoting *Conley v. Gibson*, 335 U.S. 41, 47 (1957)). In this regard, however, a plaintiff must offer "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* at 1965. Dismissal is warranted under Rule 12(b)(6) if, assuming the truth of the factual allegations in the plaintiff's complaint, there is a dispositive legal issue which precludes relief. *See, e.g.*, *Marshall County Bd. of Educ. v. Marshall County Gas Dist.*, 992 F.2d 1171, 1174 (11th Cir. 1993).

### III. ANALYSIS

**A.    RICO Claim**

According to 18 U.S.C. § 1962(c), it is unlawful "for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt." Section 1962(d) makes it unlawful to conspire to violate any of the RICO provisions contained in section 1962(a)-(c). Under section 1964(c), any person injured in business or property by a violation of section 1962 may sue in U.S. district court to recover treble damages and attorney's fees.

According to 18 U.S.C. § 1961(1), "racketeering activity" includes, among others, any act which is indictable under various sections of title 18 – such an act is referred to as a "predicate act." A "pattern of racketeering activity" requires at least two predicate acts of racketeering activity within a ten-year period. 18 U.S.C. § 1961(5). Here, Plaintiffs alleged four predicate acts in support of their RICO claims against the individual Defendants: mail fraud in violation of 18 U.S.C. § 1341, wire fraud in violation of 18 U.S.C. § 1343, interstate transportation of stolen goods in violation of 18 U.S.C. § 2314, and sale or receipt of stolen

goods in violation of 18 U.S.C. § 2315.[4]  *See* Am. Compl. ¶ 26.  All four violations are included in the definition of "racketeering activity."  *See* 18 U.S.C. § 1961(1).

### 1. Standing

One of the arguments Defendants advance in their Motion to Dismiss is that Plaintiffs do not have standing to bring their RICO claims.  In general, a plaintiff seeking to invoke a federal court's jurisdiction bears the burden of establishing standing.  *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992).  If a plaintiff lacks standing, the case or controversy requirement of Article III § 2 of the U.S. Constitution is not satisfied and the case must be dismissed.  *Id.* at 560.

Standing has three elements that must be met: (1) that the plaintiff suffered an "injury in fact" that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) that there is a causal connection between the injury and the conduct complained of, such that the injury is fairly traceable to the challenged action of the defendant; and (3) that it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.  *Id.* at 560-61.

Further, a RICO plaintiff "must show a causal connection between his injury and a predicate act" in order to recover under the statute.  *Pelletier v. Zweifel*, 921 F.2d 1465, 1497 (11th Cir. 1991); *see also Holmes v. Secs. Investor Prot. Corp.*, 503 U.S. 258 (1992).  Indeed, a RICO plaintiff must plead proximate cause – and under the Eleventh Circuit's "restrictive view of the proximate cause requirement," a RICO plaintiff "has standing to sue only if his injury flowed directly from the commission of the predicate acts." *Byrne v. Nezhat*, 261 F.3d 1075, 1110 (11th Cir. 2001) (citing *Pelletier*, 921 F.2d at 1499).  However, while there must be "some direct relation" between the alleged injury and the defendants' conduct, such conduct need not be the "sole cause" of the alleged injury.  *Williams v. Mohawk Indus., Inc.*, 465 F.3d 1277, 1287-88 (11th Cir. 2006) (citing *Anza v. Ideal Steel Supply Corp.*, --- U.S. ----, 126 S. Ct. 1991 (2006)).

Here, Defendants argue that Plaintiffs lack standing to bring their RICO claims because they failed to satisfy both the general standard for standing (in failing to allege an injury fairly traceable to Defendants' actions) and the RICO-specific standard for standing (in failing to plead they suffered an injury proximately caused by the predicate acts underlying the RICO claim).

---

[4] Together, 18 U.S.C. §§ 2314-15 constitute the National Stolen Property Act ("NSPA").

Specifically, Defendants argue that Plaintiffs' injury, the theft of their equipment, is not fairly traceable or directly related to Defendants' conduct because they have not alleged that Defendants themselves committed the theft. Thus, they argue, Plaintiffs' injuries are the result of the actions of third parties who are not before the Court. In response, Plaintiffs argue they have properly alleged that Defendants proximately caused their loss, as they alleged Defendants *knowingly* trafficked in and sold equipment stolen from Plaintiffs.

Considering the Amended Complaint in the light most favorable to Plaintiffs and drawing all inferences in their favor, as the Court must at this stage, the Court finds Plaintiffs have sufficiently alleged both that they suffered an injury fairly traceable to, and directly caused by, Defendants' conduct. Plaintiffs allege that Defendants "trafficked" in goods that were stolen from Plaintiffs, *knowing* they were stolen from Plaintiffs, beginning in 2005. Plaintiffs allege that Defendants transported these stolen goods across state lines, knowing them to have been stolen from Plaintiffs, and later sold them to customers outside the United States. Plaintiffs state that two tractor trailers full of goods were removed by law enforcement officers from Defendants' place of business, most of which had been stolen from Plaintiffs' operation sites in Florida, South Carolina, and Pennsylvania. Further, Plaintiffs allege that Defendants' "trafficking" of equipment stolen from Plaintiffs has continued since the "raid" on Defendants' property in 2006, as has the theft of Plaintiffs' equipment.

On the basis of these pled facts, Plaintiffs have sufficiently alleged that the injuries incurred by the theft of their equipment are both fairly traceable and directly caused by Defendants knowingly "trafficking" in their stolen goods. The Court finds *U.S. v. Solomon*, a criminal case involving sections 2314 and 2315, instructive on this point. 686 F.2d 863 (11th Cir. 1982). There, the court stated that

> [t]here is no doubt . . . that the act of buying stolen goods, even goods known to have been stolen, standing alone, does not make the purchaser a member of a conspiracy to steal the goods or to receive stolen goods: The purchase takes place after the theft, it may be a single isolated transaction, and has no necessary relation to the commission of the crime. But if the purchaser was part of an ongoing scheme in which he had an agreement/understanding with the core conspirators to buy the stolen goods and resell them discreetly to raise the money to pay for the goods, or consume all or part of them, there is something more than a simple purchase. In that situation the thief, the broker, and the fence interact,

each with his own contribution to make toward accomplishment of a common plan.

*Id.* at 876. Here, especially considering the low "notice pleading" standard of Rule 8(a)(2), the Court can reasonably infer that, based on Plaintiffs' pled facts, Defendants had more to do with the theft of Plaintiffs' equipment than merely purchasing goods they knew to be stolen. Thus, at this stage, Plaintiffs have sufficiently alleged that Defendants' actions are both fairly traceable and directly related to Plaintiffs' injuries.[5]

### 2. Sufficiency of Pleading RICO Claim

As stated above, section 1962(c) makes it unlawful "for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt." In order to state a claim for violation of section 1962(c) under section 1964(c), a plaintiff must allege "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity." *Sedima, S.P.R.L. v. Imrex Co., Inc.*, 473 U.S. 479, 496 (1985).

#### a. Predicate Acts

Defendants argue that Plaintiffs failed to plead the mail and wire fraud predicates supporting their RICO claims with the particularly required by Federal Rule of Civil Procedure 9(b). However, as Plaintiffs point out, and the Court notes in footnote 5, the mail and wire fraud acts are not the only predicates offered in support of the RICO claims. Indeed, Plaintiffs also allege violation of sections 2314 and 2315 of the NSPA. *See* Am. Compl. ¶ 26.

According to 18 U.S.C. § 2314, it is a crime to "transport[], transmit[], or transfer[] in interstate or foreign commerce any goods, wares, merchandise, securities or money, of the value of $5,000 or more, knowing the same to have been stolen, converted or taken by fraud."

---

[5] Defendants advance other arguments in support of their contention that Plaintiffs lack standing to bring their RICO claims, relating to the predicate acts of mail and wire fraud. *See* Defs.' Mot. to Dismiss, D.E. # 30 at 4-5. However, as Plaintiffs point out, the mail and wire fraud predicates are not the only predicates they offer in support of their RICO claim – they also allege violations of 18 U.S.C. §§ 2314-15. Since Defendants' arguments relating to mail and wire fraud do not apply to sections 2314 and 2315, and since Plaintiffs have sufficiently alleged standing based on those sections at this stage, it is unnecessary to address Defendants' arguments pertaining to mail and wire fraud.

According to 18 U.S.C. § 2315, it is a crime to "receive[], possess[], conceal[], store[], barter[], sell[], or dispose[] of any goods, wares, or merchandise, securities, or money of the value of $5,000 or more, or pledge[] or accept[] as security for a loan any goods, wares, or merchandise, or securities, of the value of $500 or more, which have crossed a State or United States boundary after being stolen, unlawfully converted, or taken, knowing the same to have been stolen, unlawfully converted, or taken."

These predicate acts based on the NSPA are distinct from Plaintiffs' other predicate acts of mail and wire fraud – Rule 9(b)'s particularity requirements do not necessarily apply to pleading violations of the NSPA. *See Special Purpose Accounts Receivable Co-op. Corp. v. Prime One Capital Co., LLC.*, 202 F. Supp. 2d 1339, 1351 (S.D. Fla. 2002). In that case, the defendants argued that the plaintiff's predicate acts under the NSPA supporting their RICO claim should be stricken because "that statute requires the commission of fraud." *Id.* at n.8. This Court determined that argument to be "without merit because the act is much broader than the defendants submit. It punishes 'whoever transports, transmits, or transfers in foreign commerce any goods, wares, merchandise, securities or money . . . knowing the same to have been *stolen, converted or* taken by fraud . . . ." *Id.* (quoting 18 U.S.C. § 2314) (emphasis in original).

Here, Plaintiffs have adequately alleged that Defendants violated sections 2314 and 2315. They alleged that Defendants both transported goods stolen from Plaintiffs across state lines and sold such goods (*see* Am. Compl. ¶¶ 18, 19, 27, 34), that such goods had a value in excess of $5,000 (*see id.* ¶ 20), and that Defendants knew such goods had been stolen from Plaintiffs at the time they transported and sold them (*see id.* ¶¶ 18, 19). Because these predicate acts as alleged do not involve fraud, Plaintiffs need not meet Rule 9(b)'s particularity requirement.

Defendants also argue that Plaintiffs' RICO claims fail because they did not properly allege scienter. "RICO does not contain any separate mens rea or scienter elements beyond those encompassed in its predicate acts." *U.S. v. Pepe*, 747 F.2d 632, 675-76 (11th Cir. 1984). In the case of sections 2314 and 2315, the scienter required is "knowingly." "A RICO plaintiff's allegations of scienter cannot be merely conclusory and unsupported by any factual allegations." *Republic of Panama v. BCCI Holdings (Luxembourg) S.A.*, 119 F.3d 935, 949 (11th Cir. 1997)

(internal quotations and citation omitted). However, according to Rule 9(b), intent may be alleged generally.

Here, Plaintiffs pled that the individual Defendants operate a business that transports goods stolen from Plaintiffs' premises in various states to Florida and sells them overseas, and have been doing so since 2005. Plaintiffs also allege that a police "raid" of their place of business yielded a large quantity of goods stolen from Plaintiffs' premises, and that overall the value of the goods stolen from Plaintiffs' premises (and presumably resold by Defendants) is in excess of two million dollars. While these pled facts are very spare, the Court finds that Plaintiffs' allegation of scienter – that the individual Defendants "knowingly" trafficked in and sold goods stolen from Plaintiffs' premises – does meet the notice pleading standard of Rule 8(a)(2), especially considering that Plaintiffs have not yet had the benefit of discovery to flesh out their allegations. Plaintiffs' pled facts suggest a fairly large-scale, sophisticated, and high-profit endeavor involving the interstate transport and resale of cable equipment – it is reasonable to infer that individuals involved in that sort of endeavor would be aware of how such goods were obtained.

       **b.**     **Pattern of Racketeering Activity**

As discussed above, one of the elements required for stating a proper section 1962(c) claim is a "pattern" of racketeering activity. *See Sedima*, 473 U.S. at 496. "A 'pattern' of racketeering activity is shown when a racketeer commits at least two distinct but related predicate acts." *Pelletier*, 921 F.2d at 1496. "Predicate acts are related if they have the same or similar purposes, results, participants, victims, or methods of commission, or otherwise are interrelated by distinguishing characteristics and are not isolated events." *Id.* at 1496-97 (internal quotations and citation omitted). "To establish a RICO pattern it must also be shown that the predicates themselves amount to, or that they otherwise constitute a threat of, *continuing* racketeering activity." *H.J. Inc. v. Nw. Bell Tel. Co.*, 492 U.S. 229, 240 (1989) (emphasis in original). "'Continuity' is both a closed- and open-ended concept, referring either to a closed period of repeated conduct, or to past conduct that by its nature projects into the future with a threat of repetition." *Id.* at 241. In some cases, "the threat of continuity may be established by showing that the predicate acts or offenses are part of an ongoing entity's regular way of doing business." *Id.* at 243.

In their Motion to Dismiss, Defendants focus on Plaintiffs' failure to allege a pattern of racketeering activity with the predicate acts of mail and wire fraud. Defendants may well be correct that Plaintiffs failed to sufficiently allege a pattern of racketeering activity based on those predicate acts, especially considering that pleadings involving fraud must satisfy Rule 9(b)'s particularity requirement. *See, e.g.*, *In re Sahlen & Assocs., Inc. Secs. Litig.*, 773 F. Supp. 342, 366 n.33 (S.D. Fla. 1991). However, as discussed above, mail and wire fraud are not the only predicate acts that Plaintiffs have alleged in support of their RICO claims; they have also offered predicate acts under sections 2314 and 2315, involving the knowing interstate transportation and sale of stolen goods. Because these predicate acts as alleged do not involve fraud, Plaintiffs need only meet the "notice" pleading requirements of Rule 8(a)(2). Under that more lenient standard, Plaintiffs have alleged a "pattern" of racketeering activity to survive Defendants' Motion to Dismiss. Plaintiffs allege that Defendants began trafficking in goods stolen from Plaintiffs in 2005, and that this trafficking (which, as alleged in the Amended Complaint, includes Defendants' interstate transportation and later sale of goods they knew to be stolen from Plaintiffs) has continued, even after a "raid" in 2006 in which law enforcement officers confiscated two tractor trailers of equipment stolen from Plaintiffs' business premises. Am. Compl. ¶¶ 17-19, 27, 34. Plaintiffs further allege that Plaintiffs allege that "the majority of the Defendants' business involves the knowing sale of equipment stolen from Plaintiffs to customers outside the United States." *Id.* ¶ 18. At this stage, Plaintiffs' allegations are sufficient to allege Defendants engaged in continuous racketeering activity in both the "closed" and "open ended" senses. *H.J. Inc.*, 492 U.S. at 243.

      c.    **Existence of a RICO Enterprise**

Another element required for a proper section 1962(c) RICO claim is conduct of an "enterprise." *See Sedima*, 473 U.S. at 496. According to section 1961(4), a RICO "enterprise" includes "any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity."

As explained by the Supreme Court, a RICO enterprise is "an entity, for present purposes a group of persons associated together for a common purpose of engaging in a course of conduct." *U.S. v. Turkette*, 452 U.S. 576, 583 (1981). The common purpose of an enterprise may be to make money. *U.S. v. Church*, 955 F.2d 688, 698 (11th Cir. 1992). Further, "'the

existence of an enterprise is proved by evidence of an ongoing organization, formal or informal, and by evidence that the various associates function as a continuing unit.'" *Williams*, 465 F.3d at 1284 (quoting *U.S. v. Goldin Indus., Inc.*, 219 F.3d 1271, 1275 (11th Cir. 2000)). "[T]he definitive factor in determining the existence of a RICO enterprise is the existence of an association of individual entities, however loose or informal, that furnishes a vehicle for the commission of two or more predicate crimes, that is, the pattern of racketeering activity requisite to the RICO violation." *Id.* In this Circuit, a RICO enterprise "need not possess an ascertainable structure distinct from the associations necessary to conduct the pattern of racketeering activity." *Goldin*, 219 F.3d at 1274-75 (internal quotations and citation omitted).

According to Defendants, Plaintiffs did not properly allege the existence of an "enterprise" within the meaning of the RICO statute. Specifically, Defendants argue that Plaintiffs did not allege facts suggesting an ongoing organization or that any of the individual Defendants functioned as a continuing unit.

The Court does not agree with Defendants on this point. Plaintiffs allege that the corporations Best Cable Supply and Vega Enterprise constitute an "enterprise" within the meaning of the RICO statute, and allege that these businesses are Florida corporations with established principal places of business and registered agents. Am. Compl. ¶¶ 5-6, 24. Plaintiffs further allege that the corporations have been conducting business, the majority of which involves transporting goods stolen from Plaintiffs across state lines and reselling them to customers outside the United States, since 2005. *Id.* ¶¶ 20, 26. The Court finds that Plaintiffs have sufficiently alleged the existence of a RICO "enterprise."

        d.    **Persons who "Conduct or Participate" in the Affairs of the Enterprise**

In their Motion to Dismiss, Defendants also argue that Plaintiffs failed to allege that any of the individual Defendants participated in the operation or management of the enterprise. Section 1962(c) makes it unlawful, in pertinent part, "for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to *conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity*." Emphasis added. In order for a person to "'conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs,' § 1962(c), [he or she] must participate in the operation or management of the enterprise itself." *Reves v. Ernst &*

*Young*, 507 U.S. 170, 185 (1993). "[T]he word 'participate' makes clear that RICO liability is not limited to those with primary responsibility for the enterprise's affairs, just as the phrase 'directly or indirectly' makes clear that RICO liability is not limited to those with a formal position in the enterprise, but some part in directing the enterprise's affairs is required." *Id.* at 179. The case *In re Managed Care Litigation*, 298 F. Supp. 2d 1259 (S.D. Fla. 2003), offers an example of the sort of allegations sufficient to state that defendants participated in the operation or management of a RICO enterprise – there, the plaintiffs survived a Rule 12(b)(6) motion because they offered specific factual assertions as to how the defendants participated in the operation or management of the RICO enterprise. *Id.* at 1276-77.

Here, Plaintiffs have failed to sufficiently allege that the individual Defendants participated in the management or operation of the enterprise through a pattern of racketeering activity. Plaintiffs allege that Defendant Humberto Vega is the "owner and operator" of Defendant Best Cable Supply and Defendant Vega Enterprise (which together constitute the RICO enterprise), and that the remainder of the individual Defendants are "employees" of both corporations. Am. Compl. ¶¶ 7-12. Plaintiffs do not offer *any* factual allegations as to *how* the individual Defendants played a part in directing the affairs of the enterprise. Plaintiffs do conclusorily allege that the individual Defendants "conducted the affairs of the Enterprise," *id.* ¶ 26, and that Humberto Vega "operat[ed]" the enterprise, but "[a]s a general rule, conclusory allegations and unwarranted deductions of fact are not admitted as true in a motion to dismiss," *S. Florida Water Mgmt. Dist. v. Montalvo*, 84 F.3d 402, 409 n.10 (11th Cir. 1996) (citation omitted). It is possible that those individuals were "owner" and "employees" only in title, or participated in the corporations in an entirely innocuous way, totally unassociated with the racketeering activity alleged – just as RICO liability is "not limited to those with a formal position in the enterprise." *Reves*, 507 U.S. at 179. The key to RICO liability is *actual* participation in the operation or management of the enterprise, not job titles or mere employment.

In sum, Plaintiffs' substantive RICO claim based on section 1964(c) claim fails because they have not sufficiently pled that any of the individual Defendants participated in the management or operation of the "enterprise." Plaintiffs' RICO conspiracy claim based on section 1964(d) fails for the same reason. "To support a claim for a federal or state RICO

conspiracy, a plaintiff must 'allege an illegal agreement to violate a substantive provision of the RICO statute.' Thus, where a plaintiff fails to state a RICO claim and the conspiracy count does not contain additional allegations, the conspiracy claim necessarily fails." *Rogers v. Nacchio*, 241 Fed. Appx. 602, 609 (11th Cir. 2007) (quoting *Jackson v. BellSouth Telecomms.*, 372 F.3d 1250, 1269 (11th Cir. 2004)). Here, Plaintiffs' RICO conspiracy claim does not contain any information curing the defect discussed above. Thus, that claim is deficient as well.

B.   **Fla. Stat. § 772.11 Claim**

Florida Statutes § 772.11 provides, in pertinent part,

> [a]ny person who proves by clear and convincing evidence that he or she has been injured in any fashion by reason of any violation of ss. 812.012-812.037 or s. 825.103(1) has a cause of action for threefold the actual damages sustained and, in any such action, is entitled to minimum damages in the amount of $200, and reasonable attorney's fees and court costs in the trial and appellate courts.

Plaintiffs allege that Defendants' alleged acts "constitute a violation of F.S. §§ 812.012-812.037." Am. Compl. ¶ 38. Plaintiffs title this count "Florida Theft Statute – Violation of Fla. Stat. Ann. § 772.11 Theft or Exploitation." According to Defendants, this claim is deficient because Plaintiffs fail to specify which portions of chapter 812 Defendants allegedly violated. Thus, Defendants argue, they are unable to formulate a response to this claim.

The Court agrees with Defendants on this point. The range of statutory provisions Plaintiffs allege Defendants violated, 812.012-812.037, contains a wide variety of criminal offenses, including: theft (812.014), theft from persons 65 years of age or older; reclassification of offenses (812.0145), unlawful possession or use of a fifth wheel (812.0147), retail and farm theft (812.015), possession of altered property (812.016), use of a fraudulently obtained or false receipt (812.017), dealing in stolen property (812.019), dealing in property paid for in whole or in part by the Medicaid program (812.0191), and dealing in stolen property by use of the Internet (812.0195). In their Amended Complaint, Plaintiffs do not specify which of these offenses caused their injuries. Thus, Plaintiffs' section 722.11 claim fails to give Defendants "fair notice

of what the . . . claim is and the grounds upon which it rests." *Twombly*, 127 S. Ct. at 1964 (quoting *Conley*, 335 U.S. at 47).[6]

### IV. CONCLUSION

For the reasons stated above, it is hereby ORDERED AND ADJUDGED that the RICO claims in Counts I and II of Plaintiffs' Amended Complaint against the individual Defendants are DISMISSED WITHOUT PREJUDICE. The Fla. Stat. § 772.11 claim in Count III against all Defendants is also DISMISSED WITHOUT PREJUDICE. Plaintiffs may replead these claims by February 4, 2008 if they can cure the defects discussed above.

DONE AND ORDERED in Chambers, Miami, Florida this January 22, 2008.

_____
Paul C. Huck
United States District Judge

Copies furnished to:
Honorable Andrea M. Simonton
All Counsel of Record

---

[6] The Court notes that Plaintiffs also failed to plead compliance with section 772.11's requirement that "[b]efore filing an action for damages under this section, the person claiming injury must make a written demand for $200 or the treble damage amount of the person liable for damages under this section." *See, e.g.*, *Korman v. Iglesias*, 736 F. Supp. 261, 267 (S.D. Fla. 1990) (finding the plaintiff failed to meet the pleading requirements of section 772.11 by failing to allege compliance with the statute's written demand requirement, but finding that failure excusable neglect); *Cascella v. Canaveral Port Dist.*, No. 6:04CV1822ORL19DAB, 2005 WL 2105956, *10 n.6 (M.D. Fla. Aug. 31, 2005) (calling the plaintiffs' "fail[ure] to allege compliance with the notice requirements" of section 772.11 a "pleading problem"). If Plaintiffs replead their section 772.11 claim, they should address this deficiency.